UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL J. VERA,<br><br>    Plaintiff,<br><br>    v.<br><br>ERIC GOUKER, et al.,<br><br>    Defendants. | Case No. 18-04470 EJD (PR)<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br><br>(Docket No. 21) |

    Plaintiff, a pretrial detainee, filed a pro se civil rights complaint under 42 U.S.C. § 1983 against employees at the Santa Cruz County Sheriff's Department. The Court found the complaint, (Docket No. 1), liberally construed, stated a cognizable Fourteenth Amendment claim of deliberate indifference for placement in conditions that amounted to punishment, and ordered service of the complaint on Defendants. (Docket No. 12.)

    Defendants Eric Gouker and Jenna Baldwin filed a motion for summary judgment (Docket No. 21, hereinafter "Mot."), and declarations and exhibits in support thereof.[1]

---

[1] Defendant Erick Gouker's declaration is filed under Docket No. 25, Defendant Jenna Baldwin's declaration is filed under Docket No. 26, non-party Lt. Daniel Freitas's declaration is filed under Docket No. 24, and defendants' counsel Mr. Ryan Thompson's declaration is filed under Docket No. 27. Defendants submit copies of the Santa Cruz County Sheriffs "Inmate Grievance" policy, excerpts from Plaintiff's inmate grievance records, among other documents, (Docket No. 22), in support of their motion as exhibits to

Plaintiff did not file an opposition although given an opportunity to do so. For the reasons discussed below, Defendants' motion is **GRANTED**.

## DISCUSSION

### I. Plaintiff's Claims

At the time of the filing of the complaint, Plaintiff was in custody at the Santa Cruz County Jail ("Jail"), presumably as a pretrial detainee. Plaintiff claims that on June 22, 2018, he was taken from the Jail's general population to solitary confinement, where he was placed in a cell without lights or plumbing for ten days and deprived of all his property. (Compl. at 3.) Plaintiff claims he was never given any incident report or any type of explanation. (Id.) Plaintiff claims "this was done" by Defendants Eric Gouker and Jenna Baldwin, both classification officers, "for personal reasons I believe, and to get me to take a deal in court faster." (Id.) Liberally construed, the Court found the allegations of Plaintiff's unjustified and unexplained placement in conditions that amount to punishment were sufficient to state a deliberate indifference claim under the Fourteenth Amendment. (Docket No. 12 at 2.) The Court dismissed the claim involving the random and unauthorized deprivation of property for failure to state a claim. (Id. at 2-3.)

### II. Statement of Facts[2]

Defendant Gouker is a Supervising Correctional Officer at the Jail and was so at the time of the underlying events. (Gouker Decl. ¶ 2.) His duties include assigning, supervising, training and evaluating the work of subordinate staff. (Id.) Furthermore, as the Classification Supervisor, Defendant Gouker reviews, investigates and responds to grievances related to housing, custody level, and all other classification specific grievances. (Id.) He was also responsible for a daily review of all inmates that are

---

these declarations.

[2] The following facts as presented by Defendants are undisputed as Plaintiff did not file an opposition.

2

administratively separated throughout the facility. (Id.)

Defendant Jenna Baldwin is also a Supervising Correctional Officer at the Jail and was so at the time of the underlying events. (Baldwin Decl. ¶ 1.) Her duties include supervising and participating in the work of booking, guarding, supervising, transporting and releasing inmates in the Santa Cruz County Detention Facilities, insuring inmates' safety and security, training correctional officers, and doing other work as required. (Id. at ¶ 2.)

On June 21, 2018, while Defendant Baldwin was on shift as a Classification Officer at the Jail, she observed a fight involving approximately 29 male inmates on the top tier of the "F-unit" in the Jail. (Baldwin Decl. ¶ 5; Gouker Decl. ¶ 5.) She called for assistance, entered F-unit, and assisted in breaking up the fight and defusing the situation. (Baldwin Decl. ¶ 5.)

Defendant Gouker investigated the circumstances regarding the fight, and three independent sources confirmed to him that Plaintiff, a high-ranking, documented gang member, had directed the fight to take place. (Gouker Decl. ¶ 6.) During the investigation, Defendant Gouker also learned that Plaintiff, through fear and intimidation, was controlling the actions of inmates at a different jail facility in Santa Cruz County. (Id. at ¶ 7, Ex. I.) Based on Plaintiff's high-level of influence within the Jail system, his involvement in directing the fight to take place, and the unique, dangerous circumstances regarding the fight, Defendant Gouker decided that it was necessary, for the safety and security of Jail staff and inmates, to transfer Plaintiff to the Santa Clara County Jail. (Id. at ¶ 8.) Defendant Gouker determined that transferring Plaintiff to Santa Clara County Jail would provide his own Jail staff necessary time to address the circumstances of the fight and to make sure it did not happen again. (Id. at ¶ 9.) Plaintiff was transported to the Santa Cruz County Jail on June 22, 2018. (Id. at ¶ 10.) On July 2, 2018, Plaintiff was transferred back to the Santa Cruz County Jail, accompanied by Defendant Baldwin, and placed in administrative segregation based on the continued safety risks he posed to Jail

3

staff and inmates. (Gouker Decl. ¶¶ 11-12, Ex. F; Baldwin Decl. ¶ 7.)

On July 3, 2018, Plaintiff submitted an inmate grievance, No. A049433, asking to be placed in general population. (Gouker Decl. ¶ 13.) Defendant Gouker investigated the grievance and made written findings, which were also provided to Plaintiff. (Id.) The findings stated, "Inmate Vera is pending transfer to a general population unit." (Id., Ex. B.)

On July 6, 2018, while Plaintiff was pending transfer to the general population unit, Plaintiff addressed an "Inmate Request Form" to Defendant Gouker, calling him a "snake liar" and threatening Defendant Gouker's life and Jail staff. (Gouker Decl. ¶ 14.) Plaintiff wrote that "an insane attack by me could prove lethal, why put your staff at risk? Im [sic] not gonna do that, but you cant [sic] know that for sure...." (Id., Ex. C.) Based on Plaintiff's threats, Defendant Gouker and Jail staff determined that it was in the best interest of the safety and security of Jail staff and inmates to keep Plaintiff in administrative segregation. (Id. at ¶ 15.)

On July 10, 2018, Plaintiff submitted another inmate grievance, No. A020254, complaining that he was put "in stripes" for the content of his July 6, 2018 "Inmate Request Form" to Defendant Gouker. (Gouker Decl. ¶ 16.) Jail staff investigated the grievance and made written findings, which were also provided to Plaintiff. (Id. at ¶ 17.) The findings state, in part, that "the Sheriff's Office takes such threats seriously" and that Jail classification would review Plaintiff's "Assault Risk" status on July 16, 2018. (Id., Ex. D.)

On July 15, 2018, Plaintiff submitted an appeal of the Jail's response to his July 10, 2018 inmate grievance. (Gouker Decl. ¶ 18.) Jail staff investigated the appeal and made written findings, which were also provided to Plaintiff. (Id. at ¶ 19.) The findings stated, "Your current housing assignment is a direct result of your behavior and was implemented for the safety and security of this facility. [unintelligible] classification unit will continue to evaluate your housing assignment." (Id., Ex. E.) Plaintiff was moved from

4

administrative segregation to general population on July 23, 2018. (Id. at ¶ 20.)

Defendant Baldwin was not involved in any of the following: the decision to transport Plaintiff to or from the Santa Clara County Jail, Plaintiff's housing assignments at the Santa Clara County Jail or the Santa Cruz County Jail, receiving or investigating Plaintiff's July 3, 2019 or July 10, 2019 grievances, receiving or investigating Plaintiff's July 15, 2018 grievance appeal, or receiving or investigating any of Plaintiff's notes or request forms complaining about Defendant Gouker. (Baldwin Decl. ¶ 8.)

## II. Summary Judgment

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Cattrett, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. See Celotex Corp., 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id. at 325. If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may

5

be granted. See Liberty Lobby, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324 (citations omitted). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Id. at 323.

The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fact. See T.W. Elec. Serv., Inc. V. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. See id. at 631. It is not the task of the district court to scour the record in search of a genuine issue of triable fact. Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. Id. If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party. See id.; see, e.g., Carmen v. San Francisco Unified School District, 237 F.3d 1026, 1028-29 (9th Cir. 2001).

### A. Exhaustion

The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory and no longer left to the discretion of the district court. Woodford v. Ngo, 548 U.S. 81, 84 (2006) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)). "Prisoners must now exhaust all 'available' remedies, not just those that meet federal standards." Id. Even when the relief sought

6

cannot be granted by the administrative process, i.e., monetary damages, a prisoner must still exhaust administrative remedies. Id. at 85-86 (citing *Booth*, 532 U.S. at 734). The PLRA's exhaustion requirement requires "proper exhaustion" of available administrative remedies. Id. at 93.

Compliance with prison grievance procedures is all that is required by the PLRA to "properly exhaust." Jones v. Bock, 549 U.S. 199, 217-18 (2007). The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. Id. at 218. In California, the regulation requires the prisoner "to lodge his administrative complaint on CDC form 602 and 'to describe the problem and action requested.'" Morton v. Hall, 599 F.3d 942, 946 (9th Cir. 2010) (quoting Cal. Code Regs. tit. 15 § 3084.2(a)); Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (same). California regulations also require that the appeal name "all staff member(s) involved" and "describe their involvement in the issue." Cal. Code Regs. tit. 15, § 3084.2(a)(3).

The grievance need not include legal terminology or legal theories unless they are needed to provide notice of the harm being grieved. Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009). Nor must a grievance include every fact necessary to prove each element of an eventual legal claim. Id. The purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation. Id. The grievance should include sufficient information "to allow prison officials to take appropriate responsive measures." Id. (citation and internal quotation omitted) (no exhaustion where grievance complaining of upper bunk assignment failed to allege, as the complaint had, that nurse had ordered lower bunk but officials disregarded that order); see Wheeler, 772 F.3d at 840 (claim properly exhausted where inmate described nature of the wrong and identified defendant as a responding officer who applied pressure to inmate's ankle deliberately to inflict pain).

7

Nonexhaustion under § 1997e(a) is an affirmative defense. Jones, 549 U.S. at 211. Defendants have the burden of raising and proving the absence of exhaustion, and inmates are not required to specifically plead or demonstrate exhaustion in their complaints. Id. at 215-17. In the rare event that a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). Otherwise, defendants must produce evidence proving failure to exhaust in a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Id. If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. Id. at 1166. But if material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts in a preliminary proceeding. Id.

The defendant's burden is to prove that there was an available administrative remedy and that the prisoner did not exhaust that available administrative remedy. Id. at 1172; see id. at 1176 (reversing district court's grant of summary judgment to defendants on issue of exhaustion because defendants did not carry their initial burden of proving their affirmative defense that there was an available administrative remedy that prisoner plaintiff failed to exhaust); see also Brown v. Valoff, 422 F.3d 926, 936-37 (9th Cir. 2005) (as there can be no absence of exhaustion unless some relief remains available, movant claiming lack of exhaustion must demonstrate that pertinent relief remained available, whether at unexhausted levels or through awaiting results of relief already granted as result of that process). Once the defendant has carried that burden, the prisoner has the burden of production. Albino, 747 F.3d at 1172. That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. Id. But as required by Jones, the ultimate burden of proof remains with the defendant. Id.

Defendants assert that Plaintiff failed to exhaust his administrative remedies while

housed at the Jail. (Mot. at 5.) At the time of the events alleged in the complaint, it was (and remains) the Jail's practice and procedure to inform inmates of their ability to file a grievance with Jail staff. (Freitas Decl. ¶ 6, Ex. A, "Policy 610: Inmate Grievances.") According to the Jail's policy, inmates may file a grievance relating to conditions of confinement, including release date, housing, medical care, food services, hygiene and sanitation needs, recreation opportunities, classification actions, disciplinary actions, program participation, telephone and mail use procedures, visiting procedures and allegations of sexual abuse. (Id., Ex. A at 1.) Staff must first attempt to informally resolve all grievances at the lowest level. (Id., Ex. A at 1.) If there is no resolution at the informal level, the inmate may submit a grievance form. (Id.) The grievance is then investigated, and the results of the investigation are provided to the inmate. (Freitas Decl. ¶ 7.) Inmates are also informed of their ability to appeal the Jail's findings of their grievance to the first level; the appeal form shows that the first level response is from the Facility Manager. (Id. at ¶ 8; see, e.g., Ex. D.) The appeal is then investigated, the results of which are provided to the inmate. (Freitas Decl. ¶ 9.) The inmate may then submit the matter to the second level appeal; the same appeal form shows that the response at the second level is from the Chief Deputy. (Id., Ex. D.)

According to the allegations in the complaint, Plaintiff submitted a "request form to be taken out of solitary" on July 12, 2018, which was "denied no reason given." (Compl. at 1.) With regard to the first level appeal, Plaintiff claims that on July 13, 2018, he filed an appeal which he identifies as "#A020252," asking to be placed back in "g.p." which was "denied without cause." (Id. at 2.) With regard to the second level appeal, which is the Jail's final level of appeal, Plaintiff claims he submitted it on July 15, 2018, and that "appeal officers refuse to answer." (Id.) Lastly, Plaintiff asserts that "second formal level is final level [and] officers routinely just throw them away." (Id.)

In contrast, the evidence submitted by Defendants does indicate that Plaintiff filed a grievance "#A020252." Rather, their evidence, which has not been disputed by Plaintiff,

9

shows that Plaintiff filed two grievances regarding his placement in administrative segregation: No. A049433 and No. A020254. See supra at 4-5. In grievance No. A049433, which was filed on July 3, 2018, Plaintiff sought to be placed back in general population. Id. at 4; (Freitas Decl. ¶ 11, Ex. B). Defendant Gouker's response stated that Plaintiff was "pending transfer to a general population unit." (Id.) Plaintiff did appeal this grievance. (Freitas Decl. ¶ 12.) Plaintiff filed grievance, No. A020254 on July 10, 2018, complaining that he was put "in stripes" for the content of a July 6, 2018 "Inmate Request Form" in which he made threats to Defendant Gouker and Jail staff. See supra at 4; (Freitas Decl. ¶ 14, Ex. D). Jail staff's findings included the statement that "the Sheriff's Office takes such threats seriously" and that the Jail classification would review Plaintiff's "Assault Risk" status on July 16, 2018. (Id.) Plaintiff submitted a first level appeal of this grievance on July 15, 2018. See supra at 4-5; (Freitas Decl. ¶ 15, Ex. E). The Jail staff's findings stated, "Your current housing assignment is a direct result of your behavior and was implemented for the safety and security of this facility. [unintelligible] classification unit will continue to evaluate your housing assignment." See supra at 5; (Freitas Decl. ¶ 15, Ex. F). Plaintiff did not submit a second level appeal for grievance No. A020254. (Freitas Decl. ¶ 16.)

Based on the undisputed evidence, the Court finds Defendants have met their burden of establishing that there was an available administrative remedy and that Plaintiff did not exhaust that available administrative remedy. See Albino, 747 F.3d at 1172. Specifically, Defendants have shown that Plaintiff could have pursued either of his grievances, Nos. A049433 and A020254, to the second level of appeal, which was the final level of appeal available to him at the Jail, but Plaintiff did not. The burden then shifts to Plaintiff to come forward with evidence showing that existing and generally available administrative remedies were effectively unavailable to him. Id. Plaintiff has filed no opposition to dispute the evidence submitted by Defendants in support of their summary judgment motion or to support the allegations in his complaint, e.g., a copy of the

10

grievance "#A020252" which he identifies as exhausting his claims. Accordingly, Defendants are entitled to summary judgment under Rule 56 based on Plaintiff's failure to exhaust administrative remedies of all the claims against them. Id. at 1166.

Because Plaintiff has failed to exhaust any of the claims in the instant action, the Court need not address Defendants' motion for summary judgment on other grounds.

## CONCLUSION

For the reasons stated above, Defendants Eric Gouker and Jenna Baldwin's motion for summary judgment is **GRANTED**. (Docket No. 21.) The Fourteenth Amendment claim against them is **DISMISSED** for failure to exhaust administrative remedies.

This order terminates Docket No. 21.

**IT IS SO ORDERED.**

Dated: 12/6/19

EDWARD J. DAVILA
United States District Judge

Order Granting MSJ
PRO-SE\EJD\CR.18\04470Vera_grant-msj(exh)

11